IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BYRON JOHNSON, | ) |
| | ) |
| Plaintiff | ) Case No.: 16 C 5115 |
| | ) |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| CANDICE JONES, Director of the Illinois | ) |
| Department of Juvenile Justice, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Byron Johnson filed the instant lawsuit against defendant Candice Jones in her official capacity as former Director of the Illinois Department of Juvenile Justice,[1] claiming that he was discriminated against due to his age and race in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(c) and Title VII of the Civil Rights Act of 1964 as amended by, *inter alia* the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq.[2] Defendant has moved for summary judgment under Fed. R. Civ. P. 56. For the reasons stated below, defendant's motion is granted.

**FACTS**[3]

Plaintiff, an African-American, began working for the Illinois Department of Corrections in 1996. He continued with the Illinois Department of Juvenile Justice ("IDOJJ" or "defendant") after it separated from the Illinois Department of Corrections in 2006. From 2012 until his termination on July 31, 2015, plaintiff held the position of Assistant Superintendent of Operations

---

[1] Heidi Mueller, Director of the Illinois Department of Juvenile Justice and successor to Candice Jones, is automatically substituted as defendant, pursuant to F. R. Civ. P. 25(d).

[2] In his response brief, plaintiff abandoned his age discrimination claim. Therefore, the court considers only plaintiff's race discrimination claim.

[3] The following facts are taken from the parties' L.R. 56.1 statements.

at Illinois Youth Center-St. Charles ("IYC-St. Charles"). IYC-St. Charles accommodates approximately 300 juvenile offenders. As Assistant Superintendent of Operations, plaintiff's duties involved supervising facility operations. Plaintiff also sometimes served as the Duty Administrative Officer ("DAO"), the individual in charge of the facility at any given time. The DAO role rotated among the IYC-St. Charles leadership team, including plaintiff.

Plaintiff alleges that defendant discriminated against him both in the conditions of his employment,[4] and in terminating him on July 31, 2015. Plaintiff's charge of discrimination with the Illinois Department of Human Rights and United States Equal Employment Opportunity Commission ("EEOC") raised only the issue of discrimination in discharge. The EEOC sent plaintiff a Notice of Right to Sue dated February 3, 2016, which he received on February 12, 2016.

At the time of plaintiff's termination, Candice Jones, an African-American, was the Director of IDOJJ. IYC-St. Charles was managed by a team consisting of Superintendent Jeff Bargar, Assistant Superintendent of Programs Stephanie Lawson, and plaintiff. Both plaintiff and Lawson reported directly to Superintendent Bargar. Superintendent Bargar reported to the executive team, consisting of Director Jones, Deputy Director of Programs Heidi Mueller, and Deputy Director of Operations Jesse Montgomery, an African-American. At all relevant times, a Federal Consent Decree and Remedial Plan were in place to address conditions of confinement, including mental health, education, and safety.

---

[4] For example, plaintiff alleges he was not invited to a IDOJJ awards ceremony, scheduled to work on three consecutive weekends, and directed to staff the front gate during an escape incident.

Plaintiff received overall positive performance reviews in August 2012, August 2013, and September 2014. However, three incidents occurred within approximately one year of plaintiff's termination that defendant identifies as the basis for its decision to terminate plaintiff.

The first incident defendant cites as a reason for plaintiff's termination occurred during a monthly video conference call Director Jones held with executive and administrative staff. The purpose of the calls was to review critical issues, including progress on the consent decree and remedial plan. Plaintiff participated in these calls. During one call, approximately one year prior to plaintiff's termination, Director Jones posed a question to plaintiff regarding mental health screening. Plaintiff was not able to correctly answer the question, which was subsequently answered accurately by Clinical Services Supervisor Christine Rothwell. Plaintiff alleges that Director Jones' question was outside the scope of his job duties because it related to a program function rather than facility operation. Defendant, however, expected plaintiff, in his role as Assistant Superintendent of Operations, to know significant operational, program, and reform related changes. Jones never spoke to plaintiff to express dissatisfaction in his inability answer her question. To the court's knowledge, plaintiff was not formally disciplined for this incident.

The second incident defendant cites as a reason for plaintiff's termination occurred following a situation on June 8, 2015, in which two youths escaped from IYC-St. Charles housing. One made it off the premises. All members of the IYC-St. Charles leadership team, including plaintiff, were summoned to the facility. On the afternoon of June 9, 2015, a meeting of leadership staff occurred to establish a command schedule to ensure continuous coverage during this crisis situation. Plaintiff volunteered to work a shift from 5:00 p.m. until 12:00 a.m. At midnight, Stephanie Lawson would return to relieve plaintiff of his duties. However, at 8:42 p.m. plaintiff,

3

the highest ranking officer on duty at the time, left the facility without securing authorization from Superintendent Bargar or any other member of the executive team. Plaintiff alleges that he attempted to contact Superintendent Bargar, but that he could not reach him. Before leaving, plaintiff turned over control of the facility to Reception Unit Administrative Supervisor Chris Voights, a former superintendent. Plaintiff claimed to be tired as he had gotten less than three hours of sleep over the past 38 hour period and had forgotten to take his diabetes medication. Nevertheless, plaintiff left during a shift he agreed to cover at a critical time for IYC-St. Charles. Defendant disciplined plaintiff for his conduct during this incident with a verbal warning.

The final incident defendant cites as a basis for plaintiff's termination occurred on June 26, 2015, when Juvenile Justice Supervisor Stephen Walker used chemical agents on a youth. The youth had become violent and upset. Walker and other security staff contacted plaintiff before he arrived at the facility to inform him of the escalating situation. Plaintiff claims he was told the youth was banging his head, pounding on windows, and kicking doors. Plaintiff took an active role in managing the situation by directing Walker move the youth to timeout and later to a more secure room. Upon plaintiff's arrival at the facility, plaintiff attempted to deescalate the situation by conversing with the youth in the youth's holding cell and informing the youth that he would be moved. The youth became increasingly irate and Walker administered chemical restraints. Stephanie Lawson was the DAO in charge of the facility at that time, but the parties dispute whether DAO Lawson was present at the time at the time chemicals were used. The parties also dispute which IYC-St. Charles employee authorized use of chemical agents.

The Illinois Administrative Code permits use of chemical agents on youth only with the authorization of the shift supervisor or someone with higher authority. The consent decree requires

4

defendant have policies regarding circumstances when facility staff are permitted to use pepper spray and mandates an oversight and discipline system with prompt investigation of allegations of excessive force. Following the incident, Deputy Director of Operations, Jesse Montgomery, reviewed the use of force. In an email exchange between plaintiff and Montgomery a few days after the incident, plaintiff indicated that his "only thoughts at that time were to get this youth out of this room before he hurts himself." Montgomery referred the incident for external investigation, but that investigation was never completed. To the court's knowledge, no employee was formally disciplined in this incident.

Defendant terminated plaintiff, an at will employee, on July 31, 2015. The termination letter did not cite a basis for termination and did not offer any opportunity for appeal or grievance. Defendant does not recall when the decision to terminate plaintiff occurred. Within weeks of plaintiff's termination, Stephanie Lawson was transferred to another IDOJJ facility and Jeff Bargar was demoted.

Following his termination, plaintiff filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and Equal Employment Opportunity Commission ("EEOC"). The IDHR and EEOC charge described plaintiff's issue solely as discharge due to race and age. It did not contain any additional allegations of discriminatory conduct.

## **DISCUSSION**

I.   <u>Legal Standard</u>

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The movant bears the burden of establishing both elements, <u>Becker v. Tenenbaum–Hill Associates, Inc.</u>, 914 F.2d 107, 110 (7th

Cir. 1990), and all reasonable inferences are drawn in the non-movant's favor. Fisher v. Transco Services- Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). If the movant satisfies this burden, then the non-movant must set forth specific facts showing that there is a genuine issue for trial. Nitz v. Craig, 2013 WL 593851 at *2 (N.D. Ill. Feb. 12, 2013). In doing so, the non-movant cannot simply show there is some metaphysical doubt as to the material facts. Pignato v. Givaudan Flavors Corp., 2013 WL 995157, *2 (N.D. Ill. March 13, 2013) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find in favor for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

II.     Analysis

Title VII forbids employment discrimination based on race. 42 U.S.C. § 2000e-2(a)(1). Before bringing a lawsuit on the basis of a Title VII claim, a party has the obligation to first file a charge with the EEOC detailing the parties claim of discrimination. Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974). There must be "a reasonable relationship between the allegations in the charge and the claims in the complaint," such that "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). "[T]he EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." Id. at 501. An EEOC charge raising allegations of a hostile work environment arises from separate conduct separate from a discriminatory discharge. Moore v. Vital Products, Inc., 641 F.3d 253 (7th Cir. 2011).

6

Plaintiff alleges he was discriminated against not just in termination, but that defendant discriminated against him "by treating him differently in terms and conditions of employment and, by excessive discipline and demanding higher performance from him." His EEOC charge, however, was limited to his discharge. The EEOC charge does not claim any other instances of discrimination in employment practices. "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role as well as deprive the charged party of notice of the charge." Cheek, 31 F.3d at 500. An investigation into plaintiff's termination charge would not be reasonably expected to cause investigation into defendant's conduct during plaintiff's employment. Therefore, the court considers only plaintiff's wrongful termination claim.

A plaintiff bringing a Title VII claim can defeat summary judgement in one of two ways. First, a plaintiff may use the burden-shifting framework created by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this approach, the plaintiff must first present evidence to establish a prima facie case that: (1) he is a member of a protected class; (2) he was satisfying his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside his protected class were treated more favorably. A similarly situated employee, must be "directly comparable to the plaintiff in all material respects." Coleman v. Donahoe, 667 F.3d 835, 846 (7th Cir. 2012). Generally, the similarly situated individual should have the same supervisor, be subject to the same standards, and have "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Id. (quoting Gates v. Caterpillar, Inc., 513 F.3d 680, 690 (7th Cir. 2008)). If the plaintiff satisfies this initial burden, then

7

the employer must articulate a legitimate non-discriminatory reason for the adverse action. The burden then shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual. See Andrews v. CBOCS W., Inc., 743 F.3d 230, 234 (7th Cir. 2014) (overruled in part by Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 765–66 (7th Cir. 2016)). Pretext is "more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." Ennin v. CNH Industrial America, LLC, 878 F.3d 590, 596 (7th Cir. 2017) (quoting Burton v. Bd. of Regents, 851 F.3d 690, 698 (7th Cir. 2017)).

In the alternative, a plaintiff may choose to defend a summary judgement motion by pointing to sufficient evidence in the record, whether direct, indirect or circumstantial, from which a reasonable jury could conclude that defendant fired him because he belonged to a protected class. Ortiz., 834 F.3d at 764. "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself . . . ." Id. at 765.

Plaintiff attempts to demonstrate a prima facie case of discrimination under the McDonnell Douglas burden shifting framework. Plaintiff meets the first and third prongs by establishing that he is a member of a protected class and that he suffered an adverse employment action in being terminated on July 31, 2015. Plaintiff fails to satisfy, however, the second and fourth prongs of a prima facie case. Plaintiff does not satisfy the second prong because he is unable to show that he was meeting defendant's legitimate expectations. Defendant held legitimate expectations that, as a senior employee at IYC-St. Charles, plaintiff would remain on the premises during assigned shifts, would be knowledgeable about all aspects of facility operation, and would support the implementation of the Consent Decree and Remedial Plan, specifically as it related to youth safety.

Moreover, even if plaintiff had been able to establish he met defendant's legitimate expectations (which he cannot), he fails the fourth prong because he is unable to show differential treatment among similarly situated employees not within the protected class. Plaintiff infers discrimination solely from what he describes as differential treatment of a similarly situated Caucasian individual, Stephanie Lawson. Plaintiff must show, however, that a similarly situated employee is "directly comparable to the plaintiff in all material respects, which includes showing that coworkers engaged in comparable rule or policy violations." Patterson v. Indiana Newspapers, Inc., 589 F.3d 357 (7th Cir. 2009) (internal citations omitted). Both Lawson and plaintiff held similar positions as Assistant Superintendents and both had the same supervisor. Defendant admits that Lawson was "not very strong at IYC-St. Charles," but plaintiff cannot demonstrate that Lawson ever engaged in comparable violations of rules and policies. Lawson was the DAO at the time of the use of force incident, but unlike plaintiff, she did not abandon her post during a critical escape incident. Plaintiff was the only one who left the IYC-St. Charles without authorization during the escape incident. Defendant treated Lawson and plaintiff differently, transferring Lawson to another IDOJJ facility shortly before terminating plaintiff. This differential treatment does not create an inference of racial discrimination, however, because Lawson and plaintiff were not similarly situated.

Finally, even if plaintiff could establish a prima facie case, he cannot meet his burden to demonstrate that a reasonable jury could conclude defendant's explanation for plaintiff's termination is a pretext for racial discrimination. The court considers whether plaintiff was meeting expectations "through the eyes of [his] supervisors at the time of [his termination]." Gates v. Caterpillar, Inc., 513 F.3d 680, 689 (7th Cir. 2008). The court does not "sit as 'super-personnel'

9

to question the wisdom or business judgment of employers . . ..” Id. So long as defendant articulates a lawful reason for discharging plaintiff, "it is not [the court's] province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Giannopoulous v. Brach & Brock Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997). It is clear that plaintiff disagrees with defendant's judgement that he was not meeting legitimate expectations. Plaintiff presents no evidence, however, to show that he was dismissed on some basis other than defendant's belief that plaintiff was not meeting such expectations.

In the instant case, plaintiff does not cite any evidence that defendant held any racial animus against plaintiff.[5] Plaintiff has no evidence that any IDOJJ employee made any comment regarding his race. Plaintiff claims that he was not invited to attend a luncheon and informal awards ceremony, but plaintiff testified that he was working at the time of the event and does not know whether other African-American employees were invited to attend. In his deposition, plaintiff was asked if he had any reason to believe that defendant would be inclined to discriminate against him based on his race. Plaintiff admitted he had no evidence of racial discrimination. "I don't know if it was she discriminated against African Americans. I know she discriminated against me."

Plaintiff also testified that he was discriminated against by being asked to work on off-days, three weekends in a row, but the leadership staff were all required to work on some off-days and the situation was handled when Deputy Director of Programs Heidi Mueller ensured

---

[5] At the time of plaintiff's termination, IDOJJ's employed two African Americans as executive staff, Director Candice Jones and Deputy Director of Operations Jesse Montgomery. These individuals were both higher ranking than plaintiff. Director Jones was the ultimate decision maker in plaintiff's termination.

Plaintiff that he would not have to continue working consecutive off-days. Plaintiff further alleged he was discriminated against by being directed to man the front gate for a few hours during the escape incident, a task plaintiff found degrading, and because defendant canceled plaintiff's vacation, scheduled for the week after his termination. Defendant paid plaintiff for this vacation time. Taken as a whole, these claims amount to complaints about the merits of employment decisions concerning plaintiff; they do not, however, constitute evidence of a racial animus motivating defendant's decision to terminate plaintiff.

For the same reasons that plaintiff cannot survive under the McDonnell Douglas framework, plaintiff cannot defeat summary judgment under Ortiz. Taken as a whole, the evidence is insufficient "to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action." Ortiz, 934 F.3d at 765. Nothing in the record suggests plaintiff's dismissal was due to racial bias. Plaintiff has presented some evidence to demonstrate, at most, that Director Jones may have made a bad decision based on incomplete knowledge. But there is simply no record evidence even to suggest that defendant's decision was the result of any personal racial bias by Jones against African Americans. Nor is there any evidence that Jones discriminated against him based on information selectively given to her by a subordinate who held a racially discriminatory animus. In short, there is simply no evidence that defendant's termination was based on his race. Consequently, defendant's motion for summary judgment is granted.

## **CONCLUSION**

For the reasons stated above, defendant's motion for summary judgment (Doc. 37) is granted.

**ENTER:** **February 8, 2018**

_____
**Robert W. Gettleman
United States District Judge**